**CROWN BUILDERS, INC., Plaintiff,**
**v.**
**STOWE ENGINEERING CORPORATION, Defendant.**

Civil No. 1997-176

District Court of the Virgin Islands

Division of St. Thomas and St. John

June 9, 1998, Decided

JAMES M. DERR, St. Thomas, *For plaintiff.*

W. JOHN AMERLING, St. Thomas, *For defendant.*

**MEMORANDUM**

Moore, *Chief Judge.*

Plaintiff's motion for a preliminary injunction DENIED; and plaintiff's motion for attachment DENIED WITHOUT PREJUDICE.

249

## INTRODUCTION

The Court is here presented with a request to reconsider its ten-year old precedent holding the Virgin Islands statute providing for prejudgment attachment "unconstitutional on its face for its total failure to safeguard the defendant's due process rights." *Walsh v. Edward J. Gerrits, Inc.*, 24 V.I. 118 (D.V.I. 1988).[1] The statute is found at V.I. CODE ANN. tit. 5, §§ 251-73 (1997) ["Attachment Statute"]. The *Walsh* decision, which was not appealed, is only one paragraph of nine or ten lines in length. The opinion contains no analysis. It simply cites four Supreme Court cases and states that "due process requires that the defendant be afforded notice and opportunity for a hearing and participation of a judicial officer, when his property is seized. Our local statue completely ignores fourteenth amendment principles of due process."[2] The four cases are: *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606, 42 L. Ed. 2d 751, 95 S. Ct. 719 (1975); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 628, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972); and *Sniadach v. Family Finance Corporation of Bay View*, 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969).

This issue arises in the context of a dispute between a contractor, Stowe Engineering Corporation ["Stowe"], and one of its subcontractors, Crown Builders, Inc. ["Crown"], regarding Stowe's alleged failure to pay Crown for work done on a heat recovery steam generator project at the St. Thomas facility of the Virgin Islands Water and Power Authority ["WAPA"]. Crown, the subcontractor, filed a complaint alleging that the general contractor, Stowe, is indebted to it for work done and that WAPA, as the owner of the property, owes and is about to pay Stowe for work on the project. Because the property of WAPA is exempt from all liens

---

[1] While the decision of another judge of this Court is entitled to and given great respect, it is not binding on other judges of the Court.

[2] The Fourteenth Amendment to the United States Constitution is applicable to the Virgin Islands through the section 3 of Revised Organic Act of 1954, 48 U.S.C. § 1561). The Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit. 1) ["REV. ORG. ACT" or "Revised Organic Act"].

and execution,[3] Crown was denied the usual protection of a construction lien[4] against the land and property of the owner whose property is improved by the subcontractor's efforts.

Giving notice to Stowe and requesting a hearing, Crown moved for a prejudgment attachment against Stowe to ensure that Crown would be paid when WAPA pays Stowe.[5] In support of its motion, Crown submitted the affidavit of its president. Stowe opposed the motion and filed the affidavit of its president. At the hearing on the motion, the parties agreed to maintain the status quo pending a ruling, and the Court gave them time to brief whether the Court should reconsider *Walsh* and uphold the constitutionality of the Virgin Islands Attachment Statute. Since the hearing, the parties have stipulated to stay all aspects of this action, save this motion for prejudgment attachment, pending arbitration. The briefs of the parties have been filed and the Court here issues its ruling.

## CONSTITUTIONAL REQUIREMENTS

Of the four cases relied on in *Walsh*, the statutory scheme most closely resembling our Attachment Statute was the Louisiana *ex parte* procedure upheld by the Supreme Court which allowed a lienholder to have disputed goods sequestered without prior notice and hearing. *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895. *Mitchell* followed by two years the Supreme Court decision finding a due process violation in Florida replevin provisions which permitted vendors to have goods seized simply by an *ex parte* application to a court clerk and the posting of a bond without notice and hearing. *Fuentes v. Shevin*, 407 U.S. at 80. The Court found sufficient differences in the factual and legal backgrounds between *Mitchell* and *Fuentes* to be able to uphold the

---

[3] WAPA is exempt from all liens and execution on its property:

> All property including funds of the Authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the Authority be a charge or lien upon its property . . . .

30 V.I.C. § 111(a).

[4] Construction liens are provided for in 28 V.I.C. §§ 251-76.

[5] Crown's motion for preliminary injunction was rejected after oral argument for lack of sufficient evidence to justify equitable relief.

Louisiana sequestration statute. As noted in *Connecticut v. Doehr*, 501 U.S. 1, 115 L. Ed. 2d 1, 111 S. Ct. 2105 (1991), these differences included

> Louisiana's provision of an immediate postdeprivation hearing along with the option of damages; the requirement that a judge rather than a clerk determine that there is a clear showing of entitlement to the writ; the necessity for a detailed affidavit; and an emphasis on the lienholder's interest in preventing waste or alienation of the encumbered property.

*Id.* at 10 (*citing Mitchell*, 416 U.S. at 615-18). Even though the writ could be obtained by *ex parte* application with no advance notice or opportunity to be heard given to the debtor, these differences, plus the plaintiff's vendor's lien in the property and the uncomplicated nature of the issues at stake, which were susceptible of documentary proof, served to "minimize the risk that the writ [would] be wrongfully issued by a judge." *Mitchell*, 416 U.S. at 609-610.

In addition to *Fuentes*, the Supreme Court found due process violations in the two other decisions relied on in *Walsh. I.e., North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719 (*ex parte* garnishment remedy failed to require prior notice and hearing, posting of a bond, detailed affidavit stating the claim, neutral judicial officer, or prompt postdeprivation hearing); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 342, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (prejudgment garnishment of wages violated due process without requiring prior notice and hearing).

Then, in 1991, some three years after this Court's decision in *Walsh*, the Supreme Court provided guidance for determining whether a prejudgment attachment scheme meets the minimum requirements of Due Process in *Connecticut v. Doehr*.[6] The Court

---

[6] The Court had earlier drawn on its prejudgment remedy rulings, the same ones cited in *Walsh*, to fashion a threefold inquiry to determine whether the federal government's procedures for depriving persons of property interests satisfy due process, noting that "these decisions underscore the truism that '"due process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Mathews v. Eldridge*, 424 U.S. 319, 343-344, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976) (citation omitted). The factors which required consideration in the government deprivation context were (1) "the private interest that will be affected by the official

applied a three-factor test to determine the constitutionality of prejudgment remedy statutes.

> The relevant inquiry requires . . . *first*, consideration of the private interest that will be affected by the prejudgment measure; *second*, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and *third*, . . . principal attention to the interest of the party seeking the prejudgment remedy, with . . . due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

501 U.S. at 11 (emphasis added).

The prejudgment attachment statute in *Doehr* authorized a judge to allow attachment of real property without prior notice or hearing and upon the mere conclusory affidavit of plaintiff that there was probable cause that plaintiff's claim was valid.[7] Upon application, a state judge authorized an attachment on Doehr's home based on one DiGiovanni's civil tort action against Doehr for assault and battery. DiGiovanni's supporting affidavit of five one-sentence paragraphs recited that his tort complaint was true, included medical expenses resulting from the battery, and stated his opinion that these facts were enough to establish probable cause that his claim was valid. The judge agreed that the affidavit was sufficient to demonstrate probable cause and ordered the attachment. The Supreme Court applied each of the three factors to the adequacy of the prejudgment remedy, and, after balancing their impacts, found that the Connecticut prejudgment remedy

---

action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. The Supreme Court then brought the analysis full circle to apply this three-factor balancing test to determine whether statutory prejudgment attachment procedures for private litigants meet the requirements of due process in *Connecticut v. Doehr*, 501 U.S. at 10–11.

[7] The statute also required no bond from the plaintiff. Since the Court disposed of the case on the lack of a predeprivation hearing, the majority opinion did not decide the effect of not requiring plaintiff to post a bond.

violated the requirements of due process by not providing for a predeprivation hearing.

Analyzing the Connecticut statute under the first factor, "consideration of the private interest that will be affected by the prejudgment measure," the Supreme Court found that Doehr's significant private property interest in his home was impaired by the attachment's cloud on title, which significantly reduced the property's marketability for sale or as collateral for a loan and tainted Doehr's credit rating. Even though these effects did not deprive him of possession of the property and were not permanent, due process nevertheless protected against such temporary or partial impairment to property rights. 501 U.S. at 11-12. The Court did recognize that a pre-existing interest in the property being attached, e.g., a construction or mechanic's lien, may heighten the private interest of the plaintiff or movant which would justify upholding prejudgment measures which might otherwise not meet due process requirements. *See id.* at 12 n.4. (*citing* the Court's summary affirmance in *Spielman-Fond, Inc. v. Hanson's, Inc.*, 417 U.S. 901, 41 L. Ed. 2d 208, 94 S. Ct. 2596 (1974)).

Applying the second factor, "an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards," the Supreme Court found that the prejudgment procedure permitted a substantial risk of erroneous deprivation of property. *Doehr*, 501 U.S. at 12. The Court viewed the risk of error as too great for the judge reliably to find probable cause to believe that judgment will be rendered in favor of the plaintiff from the skeletal affidavit required.

> It is self-evident that the judge could make no realistic assessment concerning the likelihood of an action's success based upon these one-sided, self-serving, and conclusory submissions. And . . . in a case like this involving an alleged assault, even a detailed affidavit would give only the plaintiff's version of the confrontation. Unlike determining the existence of a debt or delinquent payments, the issue does not concern "ordinarily uncomplicated matters that lend themselves to documentary proof."

254

*Id.* at 14 (*quoting Mitchell*, 416 U.S. at 609).

Regarding the second element of the second factor, the Court concluded that none of the safeguards afforded by the statutory scheme adequately reduced the risk of erroneous deprivation. The *Doehr* opinion again compared the Connecticut prejudgment remedies unfavorably to those upheld in *Mitchell*, despite certain similarities in protections afforded defendants under both schemes.[8]

> [I]n *Mitchell*, the plaintiff had a vendor's lien to protect, the risk of error was minimal because the likelihood of recovery involved uncomplicated matters that lent themselves to documentary proof, and the plaintiff was required to put up a bond. None of these factors diminishing the need for a predeprivation hearing is present in this case.

*Doehr*, 501 U.S. at 15.

And thirdly, giving "principal attention to the interest of the party seeking the prejudgment remedy," the interests of the plaintiff were not sufficient to warrant *ex parte* prejudgment attachment. When the plaintiff requested the attachment, he had no pre-existing interest in Doehr's real property.

> [Plaintiff's] only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action. Yet there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action during the pendency of the action that would render his real estate unavailable to satisfy a judgment. Our cases have recognized such a properly supported claim would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected. Absent such allegations, however, the plaintiff's interest in attaching the property does not justify the burdening of Doehr's

---

[8] For example, Connecticut's statute provides for notice and an expeditious postattachment adversary hearing, judicial review of an adverse decision, and an action for double damages if the original suit turns out to have been filed without probable cause. *See Doehr*, 501 U.S. at 15.

ownership rights without a hearing to determine the likelihood of recovery.

*Id. ro at 16 (citing Mitchell, 416 U.S. at 609; Fuentes, 407 U.S. at 90-92; Sniadach, 395 U.S. at 339).*[9]

Balancing the impact of the three factors, the Supreme Court held that the Connecticut prejudgment remedy violated the requirements of due process "by authorizing prejudgment attachment without prior notice or a hearing." *Doehr*, 501 U.S. at 24.

## VIRGIN ISLANDS ATTACHMENT STATUTE

The Court will first compare the provisions of the Virgin Islands's prejudgment scheme to the procedure upheld in *Mitchell*, analyze our statute to determine if it can be given a construction which supports its constitutionality under the three-fold *Doehr* balancing test, and then determine whether Crown's application for prejudgment attachment should be granted.[10]

V.I. CODE ANN. tit. 5, § 251 states the basic requisites:

> The plaintiff, at the time of issuing the summons . . . may have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered, **unless the defendant gives security to pay such judgment, as in this chapter provided**, in the following cases:
>
> (1) In an action upon a contract, express or implied for the direct payment of money, and which is not secured by mortgage, lien, or pledge upon real or personal property, or, if so secured, when such security has been rendered nugatory by the act of the defendant.

---

[9] The second prong of the third factor, "due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections," reveals no governmental interest which might affect the analysis. Since the State's substantive interest in protecting the rights of the plaintiff is no greater than its interest in those rights themselves, this would never factor into the balancing. Moreover, the financial or administrative burdens of a predeprivation hearing would seem to be no greater than a postdeprivation hearing. *See Doehr*, 501 U.S. at 16.

[10] For ease of reference, the Attachment Statute is reproduced in full and attached as an appendix to this opinion.

(2) In an action upon a contract, express or implied, against a defendant not residing in the Virgin Islands. [emphasis added]

Section 252 requires an affidavit demonstrating that plaintiff has satisfied the requirements of section 251, as well as showing that the amount of the attachment is "an actual, bona fide, existing debt, due and owing from the defendant to the plaintiff, and that the attachment is not sought nor the action prosecuted to hinder, delay, or defraud any creditor of the defendant." Finally, even with the affidavit, the attachment will not issue until plaintiff has filed an undertaking equal to "the amount for which the plaintiff demands judgment, and to the effect that the plaintiff will pay all costs that may be adjudged to the defendant, and all damages that he may sustain by reason of the attachment if the same be issued wrongfully or without sufficient cause," as specified by section 253.

## Predeprivation Notice and Hearing

One of the omissions the *Walsh* decision relied on as rendering the Attachment Statute unconstitutional is the failure of section 251 explicitly to require that the defendant debtor be given prior notice and an opportunity to be heard before the attachment issues. As the Supreme Court made clear in *Connecticut v. Doehr,* however, an *ex parte* remedy allowing a plaintiff to have disputed goods attached without prior notice and hearing does not always violate due process, citing *Mitchell v. W.T. Grant Co.,* 416 U.S. at 615-18. The important factors which allowed the Court to uphold the *ex parte* sequestration procedure included the right to a speedy postdeprivation hearing, damages for wrongful sequestration, a pre-existing interest of plaintiff in the encumbered property, an uncomplicated claim which lends itself to documentary proof, e.g., the existence of a debt, the debtor's delinquency and the nature of the creditor's interest.[11] In sum, due process can allow seizure without notice and a hearing where the defendant has a speedy opportunity to put the plaintiff to her proof and the "nature of the issues at stake minimizes the risk that the writ will be wrongfully

---

[11] See discussion *supra* pp. 7-10.

issued by a judge." *Mitchell*, 416 U.S. at 609-10. *See Doehr*, 501 U.S. at 14-15; *see also* 5 V.I.C. § 263 (a) & (b); *compare* § 253.

■ An examination of each request for attachment to make sure that our local procedure affords sufficient safeguards to minimize the risk of wrongful attachment without predeprivation notice and hearing may not be necessary, however, if the Attachment Statute reasonably can be construed to provide such prior notice and hearing by necessary implication. This Court is required to do its best to give "that interpretation of legislation which supports its constitutionality." *Screws v. United States*, 325 U.S. 91, 98, 89 L. Ed. 1495, 65 S. Ct. 1031 (1945); *see Crowell v. Benson*, 285 U.S. 22, 62, 76 L. Ed. 598, 52 S. Ct. 285 (1932) (Even when a serious doubt of a statute's constitutionality is raised, "it is a cardinal principle that [a court] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").[12] The Court here construes section 251 necessarily to imply such notice and section 263 provides the mechanism for defendant to request a prompt hearing.

The highlighted portion in the above quotation of section 251 implies notice of some sort to the defendant: *"unless the defendant gives security to pay such judgment, as in this chapter provided,"* the plaintiff may have the defendant's property attached at the same time the summons is issued. A slight rephrasing of the first paragraph of section 251 clarifies the notice it **necessarily** implies: "The plaintiff, at the time of issuing the summons . . ., may [**not**] have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered, [**if** ] the defendant gives security to pay such judgment." The clear intent of the Legislature was to give the defendant whose property was about to be attached the opportunity to prevent the attachment by providing security. To be able to take advantage of this opportu-

---

[12]More specifically, the Supreme Court has upheld and bolstered the constitutionality of a statute by "reading in" a notice requirement. *See Burns v. United States*, 501 U.S. 129, 115 L. Ed. 2d 123, 111 S. Ct. 2182 (1991). In *Burns*, a United States district judge imposed a sentence above the sentencing guideline range by *sua sponte* departing upward without giving advance notice to either the government or the defendant. While no notice is required under Rule 32 of the Federal Rules of Criminal Procedure, the Court, in order to save the rule's constitutionality, read in a notice requirement. *Id.* at 138.

nity, the defendant must be notified that the attachment is about to be issued.

It therefore is reasonable and necessary to interpret section 251 as implicitly requiring prior notice before the attachment may issue, because only this construction will give effect to the defendant's right to forestall the prejudgment attachment by posting security. Once the defendant has notice of plaintiff's motion, moreover, she has the right to move the court not to allow the attachment. Section 263(c) incorporates 5 V.I.C. § 185(b), which gives the defendant the right to submit evidence in support of her motion and to have a hearing for the Court to determine whether there is sufficient cause to allow the writ of attachment.

Based on this statutory construction, the Court finds that the Attachment Statute requires that the defendant-debtor be given notice and an opportunity to have a judicial officer decide whether the attachment will issue. The Legislature contemplated such notice by including in section 251 the right of the defendant to post security to prevent the attachment, and sections 263 and 185, in implementing this right, require a judge to determine whether the writ of attachment should issue. This construction also disposes of the other factor that caused the *Walsh* Court to hold the statute unconstitutional, namely, that section 252 appears to allow the clerk of court to issue the prejudgment attachment without the involvement of a judicial officer.

■ With this reasonable interpretation, the Attachment Statute of the Virgin Islands provides the *sine qua non* of due process — notice and predeprivation determination by a judicial officer. This is confirmed by the application to our statute of the three-fold due process analysis of *Doehr* to facts and circumstances of the case presently before the Court. Under the first *Doehr* factor, the private property interest of debtor Stowe is only in the prospective payment from WAPA which would be subject to garnishment under the prejudgment attachment. *See* 5 V.I.C. §§ 256(3) and 265-73. Significantly, but for the special legal status of WAPA, Crown would have been able to protect itself by filing a construction lien against the WAPA property its efforts have improved, which goes to the third *Doehr* factor, and establishes the substantiality of the interest Crown is seeking to protect. Crown also

alleges the exigent circumstance that Stowe might remove the property, proceeds of WAPA's payment, from the Territory without paying Crown. And, of course, the Court's construction of the Attachment Statute as requiring predeprivation notice and determination by a judicial officer assures that the risk of erroneous deprivation, considered in the second factor, will be minimized if not eliminated.

## CROWN'S APPLICATION FOR PREJUDGMENT ATTACHMENT

Having upheld the constitutionality of the Virgin Islands Attachment statute in general and as applied to the controversy between Crown and Stowe, the Court now completes the process by determining whether Crown has met the requirements for and is entitled to a prejudgment attachment/garnishment of funds WAPA is allegedly about to pay to Stowe. The Court concludes that Crown has not satisfied those requirements and is not entitled to such attachment on the record presently before the Court.

Crown served Stowe with notice in the form of a complaint, a summons and the pending motion, and moved that the hearing be expedited. Crown also attached an affidavit in support of its motion. Stowe filed its memorandum in opposition. The Court scheduled and held a hearing on the motion, at which both sides were represented by counsel and during which Stowe was given a full opportunity to contest whether the writ of attachment should be issued.[13]

As required by section 252, Crown filed the affidavit of its president, Linton Lake, purporting to show that plaintiff's motion

---

[13] It may well be that due process does not require such full and complete briefing and actual oral argument before a judge in every instance. "Due process tolerates variances in the form of a hearing 'appropriate to the nature of the case.'" *Fuentes*, 407 U.S. at 82, citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 at 313, 94 L. Ed. 865, 70 S. Ct. 652. Indeed, "the very nature of due process negates any concept of inflexible procedures universally acceptable to every imaginable situation." *Mitchell*, 416 U.S. at 628. Further, "there are 'extraordinary situations' that justify postponing notice and opportunity for a hearing." *Fuentes*, 407 U.S. at 90 (citations omitted). *See Connecticut v. Doehr*, 501 U.S. at 10. The Court of Appeals for the Third Circuit has expanded on at least one of these "extraordinary circumstances," foreign attachment for the purpose of establishing jurisdiction. *Jonnet v. Dollar Savings Bank of the City of New York*, 530 F.2d 1123, 1128 (3d Cir. 1976) ("due process does not require that foreign attachments be preceded by notice and a hearing").

satisfied the requirements of section 251. The affidavit affirmed that the general contractor, Stowe, is indebted to its subcontractor, Crown, upon an express contract for the direct payment of money. The affidavit outlined how and why the sum is due and owing: weekly time and materials billing sheets and applications for payment were supplied by Crown to Stowe; Stowe employees approved the applications and certified that the work had been done; the contract required payment within ten days of such certification of work; and over $111,000, plus interest and penalties, is therefore due and owing. The affidavit pointed out that no payment bond had been posted by Stowe to protect its subcontractors, and that Crown was prohibited by law from filing a construction lien against the Water and Power Authority to protect itself against a default of Stowe acting as contractor for WAPA. Mr. Lake had heard from a reliable person within WAPA that it intended to disburse final payment to Stowe in the very near future. Finally, the affidavit noted that Stowe was an "off-Island contractor" who affiant believed intended to take the final payment from WAPA without paying Crown. Crown's affidavit, however, did not affirm that the action was not being prosecuted to hinder, delay or defraud any of Stowe's creditors.

Stowe filed its opposition, together with the affidavit of its president, David Duro, which contested the assertion that the $111,000 was due and owing. Mr. Duro stated that, on the contrary, the question of Crown's performance of its subcontract with Stowe was disputed in several particulars, e.g., Crown had misapplied what Stowe had already paid it, Crown had refused to supply documentation necessary to support its requisitions for payment, and Crown had refused to pay its subcontractors and vendors for the items Crown had used in its requisitions. Further, Stowe had declared Crown in default because it had refused to account for its application of earlier contract payments and had refused to perform all its punch list items, requiring Stowe to have others complete Crown's work. Finally, Duro affirmed that Stowe and WAPA were negotiating over change orders and he was not aware of any specific commitment by WAPA to make any payment to Stowe.

261

■ On the record as it currently stands, the Court finds that Crown is not entitled to an attachment before judgment. While Crown has satisfied the requirements of section 251, it has not made a prima facie case that the debt is 'due and owing' or that the attachment would not hinder or delay other creditors as required by section 252. The plaintiff's motion for attachment will therefore be denied without prejudice.

## CONCLUSION

The Court has construed the Attachment Statute, 5 V.I.C. §§ 251-73 to require that a party seeking attachment must give the opposing party notice and an opportunity to be heard by a judicial officer. As thus construed, the Virgin Islands Attachment Statute meets the requirements of due process. Upon the record presently before the Court, however, plaintiff has not satisfied the requirements necessary for an attachment to issue and the motion will be denied without prejudice.

ENTERED this 9th day of June, 1998.