**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**ALRIC V. SIMMONDS, Defendant**

Criminal No. F203/07

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

June 25, 2007

DENISE GEORGE-COUNTS, ESQ., CLAUDE E. WALKER, ESQ., Assistant Attorneys General, V.I Department of Justice, St. Thomas, V.I., *Attorneys for the People.*

DEBRA S. WATLINGTON, ESQ., Assistant Territorial Public Defender, Office of the Territorial Public Defender, St. Thomas, V.I., *Attorney for the Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(June 25, 2007)

THIS MATTER is before the Court on the People's "Motion to Reconsider the Release of Defendant" pending trial and Defendant's

Opposition thereto. Based upon the reasons set forth below, the Motion will be DENIED.

## INTRODUCTION

The People's Motion seeks reconsideration of this Court's decision releasing Defendant on bail pending trial in the form of his personal recognizance. Even though the Motion is grounded in the belief that Defendant is an extreme flight risk, it raises important issues regarding the setting of bail in the Superior Court which must be addressed if only to correct public misconception of the purpose of bail and the manner in which it is set in this Court.

Judges of the Superior Court are mandated by Rule 141(b) of the Court's Rules to apply appropriate provisions of the Federal Bail Reform Act (B.R.A.) in setting bail.[1] The Court's Rules have the force and effect of law. *Tonkin v. Michael*, 349 F. Supp. 78, 9 V.I. 172, 182, (1972). The B.R.A. mandates that when a person charged with a crime is brought before a Judge, he/she shall order the person's release on personal recognizance or execution of an unsecured bond pending trial unless the Judge "determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(a)(b). It is thus clear that the first form of bail to be utilized by the Judge is release of the accused pending trial on personal recognizance or unsecured bond. This release is not subject to any conditions. 18 U.S.C. § 3142(a).

If the Judge determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, then the Judge is required to release the accused subject to the condition that the person not commit a federal, state or local crime during release "and subject to the *least restrictive* further condition or combination of conditions that such judicial officer determines will reasonably assure the appearance of the person as

---

[1] The Rule provides as follows: "Whenever a person charged with an offense is before a judge of this court for release on bail prior to trial, pursuant to these rules, the judge shall, in considering the release of such person, be guided by and apply the appropriate provisions of "The Bail Reform Act," Public Law 98-473, October 12, 1984, 18 U.S.C. §§ 3141-3156 (1985) which act is by this reference is incorporated into and made a part of these rules." See also, *Karpouzis v. Government of the Virgin Islands*, 36 V.I. 132, 137, 961 F. Supp. 841, 845 (D.V.I. 1997).

required or the safety of any other person or the community." 18 U.S.C. § 3142(c). These conditions are set forth in the B.R.A. and include "execut[ion] of a bail bond with solvent sureties ..." *Id.* Pursuant to 18 U.S.C. § 3142(c)(2), "the judicial officer may not impose a financial condition that results in the pretrial detention of the person."

■ It is to be noted that the B.R.A.'s provisions relative to the consideration of a Defendant's danger to others or the community do not apply to Judges of the Superior Court in setting bail for persons charged with non-dangerous crimes. *Karpouzis, supra,* 36 V.I. at 145, n.19. Non-dangerous offenses are deemed to be those not delineated in Title 5 V.I.C. § 3504a. *Id.*

■ Persons charged with dangerous crimes may be detained pending trial pursuant to Title 5 V.I.C. § 3504a. According to this statute, dangerous crimes are: (1) Murder in the First Degree; (2) Rape in the First Degree; (3) Arson in the First Degree; (4) Robbery in the First Degree; (5) Burglary in the First Degree; (6) Kidnapping for Ransom and (7) Drug Trafficking. The statute further provides that a person charged with any offense may ... be detained upon a hearing ... if the person ... threatens, injuries [sic], or intimidates or attempts to threaten, injure or intimidate any prospective witness or juror." The general focus of this statute is on "detaining dangerous offenders as opposed to requiring the release of non-dangerous offenders." *Government of the V.I. v. Thomas,* 32 V.I. 64, 71 (T.C. 1995). The procedure for pre-trial detention of dangerous offenders is clearly set forth in the statute.

At least since December 31, 1993, bail set for persons charged with any crime has generally been done in an arbitrary and capricious manner and in violation of the B.R.A. See, *e.g., Karpouzis, supra.* Specifically, the setting of bail begins when a person is arrested by the police. Pending the person's appearance before a judge, the police sets bail in accordance with a schedule provided by former Presiding Judge Verne A. Hodge pursuant to SUPER. CT. R. 142. See "Amended Order Setting Bail in the Absence of a Judge," (Terr. Ct. December 31, 1993).[2] For example, according to this schedule, bail for First Degree Assault is $75,000.00, Third Degree Assault is $25,000.00, First Degree Burglary is $75,000.00, Grand Larceny is $35,000.00, First Degree Rape is

---

[2]   Effective October 29, 2004, the name "Territorial Court" was changed to "Superior Court" by Act 6687.

$75,000.00 and Robbery is $75,000.00, etc. Bail for misdemeanor offenses is $1,000.00 (major) or $500.00 (minor). This schedule is still in effect and is utilized by the police each time an arrest is made.

Even though the bail schedule was instituted solely for purposes of convenience and was not intended to be binding on judges when the accused are brought to Court to be advised of their rights and for release on bail pending trial, the scheduled amounts have been generally adopted and continue to be so adopted as the bail set in Court. As such, release of persons charged with any crime on personal recognizance or unsecured bond is virtually unheard of even though most of the crimes charged are non-dangerous by definition and the accused generally have substantial ties to the community.

█ The adoption of the scheduled bail amounts in Court results in the setting of bail in violation of the B.R.A. and the denial of Equal Protection for poor defendants. Specifically, that bail is based on the nature of the offense rather than a determination, based upon findings of fact, that the accused poses a risk of flight as required by the B.R.A. "Use of a bail schedule, wherein amounts are set solely on the basis of the offense charged, violates the Eight [sic] Amendment except when resorted to as a temporary measure pending prompt judicial appearance for a particularized bail setting." WAYNE A. LAFAVE, CRIMINAL PROCEDURE, Vol. 3 § 12.2(a) (2d ed. 1999). "Each defendant stands before the bar of justice as an individual ... each accused is entitled to benefits due to his good record, and misdeeds or a bad record should prejudice only those who are guilty of them." *Stack v. Boyle*, 342 U.S. 1, 9, 72 S. Ct. 1, 6, 96 L. Ed. 3 (1951). In *Ackies v. Purdy*, 322 F. Supp. 38, 40 (D. Fla. 1970), the Court held that the setting of bail according to a master bond list deprived Defendants of an opportunity to be heard and therefore violated the Due Process Clause of the 14th Amendment. *Id.* at 41. Additionally, the adoption of the bail schedule in Court in effect makes the police *de facto* judicial officers, in violation of the doctrine of Separation of Powers, and very often results in the effective pre-trial detention of indigent persons, contrary to law, because of their inability to post the scheduled bail.

Ever since assuming the Bench in 2003, the undersigned has been setting bail in accordance with the B.R.A. as mandated by law. As a result, Defendants are often released on their personal recognizance or unsecured bond as mandated by the B.R.A. after it is determined, based

upon their sworn, oftentimes uncontroverted testimony, that they do not pose a risk of flight. Even though not required, such release is always subject to conditions to further ensure the appearance of the accused for trial or protect the victim or the community where appropriate. Upon information and belief, of the approximately 350 persons for whom pre-trial release was ordered by this Judge since he assumed the bench, no more than five have failed to appear as ordered. Only one "re-offended" the victim and another, charged with a misdemeanor and released pending trial, is alleged to have committed murder. Neither of these Defendants was charged with dangerous offenses within the meaning of 5 V.I.C. § 3504a nor had a history of violence when released.

It is to be noted that "admission to bail always involves a risk that the accused will take flight. That is a calculated risk which the law takes as the price of our system of justice." *Stack v. Boyle, supra,* 342 U.S. at 8. Concomitantly, there is always the risk that the accused will "re-offend" or commit another crime while released. In such cases, the law provides adequate and appropriate remedies, *e.g.* issuance of fugitive warrants, revocation of bail, prosecution for failure to appear, prosecution for whatever new crime is committed, contempt of Court and forfeiture of bail.

## FACTUAL BACKGROUND

In the case at bar, Defendant was arrested on June 5, 2007 and charged with Conversion, Embezzlement and Conspiracy in violation of Title 14 V.I.C. §§ 895(b), 1662 (1) and 551(I) respectively. His bail was set by the Police at $55,000.00 on June 6, 2007. Upon his appearance in Court, Judge Brenda Hollar found probable cause for his arrest and increased his bail to $100,000.00. Based upon Defendant's affidavit of financial status, she also issued an "Order Appointing Counsel" which designated the Office of the Territorial Public Defender to represent Defendant in the matter. The Record of Proceedings for the "Advice of Rights" hearing does not reflect the reason(s) for the imposition of bail at $100,000.00.[3]

---

[3]    The following colloquy occurred among the Court, Assistant Territorial Public Defender Julie Todman and Assistant Attorney General Claude Walker: *Attorney Todman:* Your Honor, bail was initially set at $55,000. Counsel for the *Government is asking for bail of over $200,000 based on allegations of conversions and conspiracy of funds of $230,000.* Your Honor, *that bail amount requested is punitive.* The Government

By Order dated June 11, 2007, Judge Hollar, after considering the proffer of collateral by Defendant's sureties to secure his bail, denied the undertaking without prejudice inasmuch as the combined value of the proffered properties totalled $192,361.00, which was $7,639.00 short of the amount required, *i.e.*, $200,000.00 or twice the amount of the bail.

On June 13, 2007, Defendant filed his "Motion for Release" seeking reduction of his bail from $100,000.00 to $80,000.00, contending, *inter alia,* that he was "not a flight risk or danger to this community."

On June 14, 2007, the matter came on for Arraignment before the undersigned. The Defendant pleaded "Not Guilty" to the 43 count Information filed against him and was advised that his case was assigned to Judge Michael Dunston. Judge Dunston was confirmed as a Judge of the Superior Court by the 27th V.I. Legislature on May 29, 2007. He has not been sworn in as a Judge, and upon information and belief, is scheduled to be sworn in on Monday July 16, 2007.

It is the practice of this Judge while presiding at arraignment to refer all motions for reduction of bail to the Judge assigned to the case for disposition. Quite often, bail set at "Advice of Rights" is reviewed by the Judge to whom the case is assigned who is often not the Judge presiding at "Advice of Rights." This review is initiated by Motions to reduce bail or modify conditions of release. Invariably, such Motions are granted.

---

cannot state that Mr. Simmonds is a flight risk nor a danger to the community and they have not alleged that, *and those are the factors under the Bail Reform Act,* Your Honor ...

...

The Court. ... while I don't find he's a danger to the community, whether he is a flight risk, since now they are alleging that instead of him having access to a quarter of a million dollars, now its almost a half of a million dollars. And as the case is coming closer, can the Court construe that there is a closer possibility of flight?

....

*The Court:* But does the previous counts and each of these counts have a minimum of how much? *Attorney Todman:* I believe 10 years. *The Court:* So, my whole problem is ... when is the next trial? *Attorney Walker:* Your Honor, July 16, is the next trial. And again *the amount of money involved, why wouldn't the Defendant now become a flight risk?* ... *The Court:* The Court is going to set bail for this case at a Hundred Thousand Dollars. It's not assigned to me, I don't know who it's assigned to. The closer it gets to the other trial, if it's assigned to me, the more the Court will be amenable to reducing it. So after the first trial. *Right now, the Court because that doubles the amount of money that is believed to have alleged that he has access to, the Court will set it at One Hundred Thousand Dollars. Attorney Walker:* Thank you, Your Honor. See transcript of "Advice of Rights" hearing, June 6th, 2007. *(emphasis added).*

Thus, contrary to the People's insinuation, there was nothing improper in this Judge's decision to consider Defendant's bail reduction motion, especially since other Judges, including Judge Hollar, have modified bail set by this Judge at "Advice of Rights."

Inasmuch as Judge Dunston has not assumed his duties as judge and is not scheduled to do so for at least one (1) month from the date of Defendant's arraignment, the undersigned decided that the Defendant's liberty interest and the interest of justice would be best served by considering his pending Motion for Reduction of Bail rather than awaiting Judge Dunston's assumption of his duties, especially where, as here, there was no assurance that the Motion would be addressed by Judge Dunston immediately upon his assuming the Bench.

Pursuant to his long standing practice and the provisions of the B.R.A., the undersigned placed the Defendant under oath, subject to the penalty of perjury, and examined him with respect to his personal background, community ties and criminal history regarding any prior failure to appear in Court when ordered to do so. The People were given the opportunity to cross-examine the Defendant but advised the Court that they had no questions for the Defendant.

Based upon the Defendant's uncontroverted testimony, the undersigned, as required by the B.R.A., determined that he did not pose a risk of flight. Specifically, the undersigned found, *inter alia,* that the Defendant was born on St. Thomas, had lived in the Territory for a substantial period of his life, had extensive family ties in the Territory, owned property in the Territory, including his residence, had never been convicted of a crime previously, had a pending case for which he never failed to appear when ordered to do so by the Court, and was gainfully employed as a sales manager at a local automobile dealership. Prior to this employment, Defendant was a high ranking government official.

In light of the foregoing findings of fact, the Court, as mandated by the B.R.A., ordered that the Defendant be released on his personal recognizance. See 18 U.S.C. § 3142(a)(b). Even though the Court was not required to impose conditions of release, conditions, including some of those set forth in the B.R.A., were imposed on the Defendant to further assure his appearance for trial.

327

## DISCUSSION

At the outset, it is to be noted that having decided to consider Defendant's pending Motion to reduce bail, this Court was not bound by Judge Hollar's decision setting Defendant's bail. See *Crown Builders, Inc. v. Stowe Engineering Corp.*, 8 F. Supp. 2d 483, 484 n.1, 39 V.I. 249 (D.V.I. 1998) ("While the decision of another Judge of this Court is entitled to and given great respect, it is not binding on other Judges of the Court"). In setting bail, this Court is forever mindful of that bedrock principle of American jurisprudence that one charged with a crime is presumed innocent until proven guilty, and not *vice versa*. In *Stack v. Boyle, supra*, 342 U.S. at 3, the U.S. Supreme Court noted that "the traditional right of the accused to freedom before conviction permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to conviction ... . Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id.*

### A. MOTION FOR RECONSIDERATION

In moving for reconsideration, the movant must show that the Motion is based on: (1) intervening change in controlling law; (2) availability of new evidence; or, (3) the need to correct clear error or manifest injustice. *See* LRCi 7.4. *See also, Bostic v. AT &T of the Virgin Islands*, 45 V.I. 553, 557, 312 F. Supp. 2d 731, 733 (D.V.I. 2004). A review of the Motion reveals that the People have failed to satisfy any of the factors for granting reconsideration.

With respect to the first factor, the law applicable to setting bail in this case is the B.R.A. This law remains in effect and controlling since the Defendant was ordered released on his personal recognizance. With respect to the second factor, the People have offered no new evidence in support of their Motion. Indeed, as will be made clear herein, the "evidence" relied upon by the People is based on pure surmise and faulty presumptions. With respect to the third reason, Defendant's release on his personal recognizance was mandated by the B.R.A. and fundamental principles of American jurisprudence, including the presumption of innocence until proven guilty. This decision was therefore manifestly just. As such, there is no error or manifest injustice to correct and the People have offered nothing to the contrary.

## B. THE PEOPLE'S "NEW EVIDENCE"

### 1. DEFENDANT'S ARREST WHILE ON RELEASE

The People first contend that Defendant was arrested in this matter while on release for another case of embezzlement. The impression created by this contention is that the crimes charged in the case at bar were committed while the Defendant was released on bail in his previously pending case. This impression is false. In both cases, the crimes charged were committed well before Defendant's arrest in the previously pending case. The fact that the People chose to charge him separately, at two different times and in two different cases, does not make Defendant any more of a flight risk or danger to the community than if the People had brought a single case against him. Moreover, the People do not contend that Defendant violated any condition of his release in the previous case and the charges in that case are still pending. Defendant has not been tried and convicted of those charges and he is presumed to be innocent of those charges as well as of the charges in the case at bar. Accordingly, no credence can be accorded the People's contention and as such, it must be rejected.

### 2. DEFENDANT'S UNSECURED RELEASE

The People further contend that if the Defendant is acquitted in the previously pending case, his appearance in the case at bar will be totally unsecured. The People refer to this possibility as if it were an unforeseen, unintended consequence that had not occurred to this Judge, or as though he had made the bail decision based upon the amount of bail set in the previous case. This Court made its decision based upon uncontroverted facts before it, not the previously pending case. If the charges in the case at bar were the only charges pending against Defendant, the Court would not have decided differently. This Court found that the Defendant's release on his own recognizance was sufficient to ensure his presence at trial for the charges herein. The fact that his appearance would be totally unsecured in the event of an acquittal in the previously pending case was not an oversight on this Court's part. Indeed, especially in light of any acquittal in that case, Defendant's right to freedom before conviction in the case at bar would be preserved by his release on his personal recognizance.

## 3. DEFENDANT'S ALLEGED ACCESS TO EMBEZZLED FUNDS

Next, the People contend that the surety bond set by Judge Hollar should be reinstated because Defendant is an "extreme flight risk" given his access to approximately $1.2 million, *i.e.*, the approximately $950,000 he allegedly embezzled in a previously pending case[4] and the approximately $230,000 he allegedly embezzled in the case at bar. It appears that Judge Hollar similarly relied on the same reasoning in concluding that Defendant was a flight risk. *See* fn. 3, *supra*. Also, in a news report regarding Defendant's release on his personal recognizance, she is reported to have said that the Defendant "may have access to more than $1 million, citing the amount prosecutors say he stole."

Defendant's presumed access to funds he allegedly embezzled is based on the faulty premise that he has been tried and convicted of embezzling those funds. Of course, no such trial and conviction has occurred to date. As such, to conclude that he has access to the funds in question is at best speculative and not based on any finding of fact. At worst, it is tantamount to convicting the Defendant before trial, thereby stripping him of the presumption of innocence to which is he entitled as a matter of law and his right to a fair trial. Moreover, at the time she set Defendant's bail, Judge Hollar entered an "Order Appointing Counsel" for Defendant. According to the Order, she:

> reviewed the Defendant's *affidavit of financial status* and *being satisfied* that the above named Defendant is *financially unable* to obtain counsel ... it is Ordered that the following member of the Bar is hereby appointed to represent the Defendant in all matters pertaining to this action ... *(emphasis added)*.

The finding that Defendant is financially unable to obtain Counsel, *i.e.* indigent, is inconsistent with his access to over $1 million, especially where, as here, Judge Hollar made a similar finding of indigency in the previously pending case and similarly appointed counsel to represent him. The People cannot have it both ways. The Defendant cannot twice be determined to be indigent while having access to substantial sums of money. In light of the finding of Defendant's indigency and in the

---

[4] See *People* v. *Alric Simmonds,* Sup. Ct. Criminal No. 112/2007. In this case, Defendant was released on bail by Judge Hollar subject to conditions, including that he (1) surrender his passport and (2) be placed on an electronic monitoring device.

absence of his conviction for the crimes charged, no credence can be accorded the People's contention that Defendant may have access to the funds he allegedly embezzled. Accordingly, the contention that he is an extreme flight risk because of such access must be rejected.

## 4. DEFENDANT'S POTENTIAL SENTENCE IF CONVICTED

The People further contend that the Defendant's age of 62 years and possible exposure make him a flight risk because he could face over 100 years in jail if convicted, in which event his sentence would "be tantamount to the rest of his life in jail." Surely, the fact that Defendant is now 62 years old does not make this statement any more true than if he were 18 years of age. Most people do not live to 100 years. The People's contention that Defendant's age makes him more of a flight risk in the Court's consideration of his potential sentence if convicted is unpersuasive.

## 5. BAIL SET AFTER FULL CONSIDERATION

Lastly, the People contend that the bail amount set by Judge Hollar was set "after over an hour of debate and discussion, and full consideration of all the facts and circumstances." The People, no doubt, contrast this to this Judge's mere "interview" of the Defendant about his ties to the community. The statement that the Court "simply interview[ed]" the Defendant is false. The People are well aware that this Court did not "interview" the Defendant. Rather, it placed the Defendant under oath, subject to the penalty of perjury, and examined him with respect to his ties to the community and any prior failure to appear in Court when ordered to do so in order to determine whether he was a flight risk. As noted heretofore, they were given the opportunity to cross examine the Defendant but declined to do so. Even if Judge Hollar's bail decision was made after an hour of debate and discussion, the transcript relative to that decision reveals that no more than five (5) minutes of that debate and discussion involved the decision with respect to bail.

As noted heretofore, this Court's determination pursuant to the B.R.A. that Defendant did not pose a risk of flight was based on his uncontroverted testimony regarding, *inter alia,* his substantial ties to the community and criminal history with respect to his failure to appear in Court when ordered to do so. As such, no credence can be accorded the

People's contention that the Court's decision was made after "simply interviewing" the Defendant.

Based on the foregoing, the conclusion is inescapable that none of the reasons posited by the People in support of their Motion for Reconsideration could reasonably be deemed to be "new evidence" so as to warrant disturbing the decision to release Defendant on his personal recognizance.

## C. NO CLEAR ERROR OR MANIFEST INJUSTICE IN RELEASING DEFENDANT ON HIS PERSONAL RECOGNIZANCE

There was no error or manifest injustice in the Court's bail decision. The purpose of bail has always been and continues to be to ensure that the Defendant will stand trial and submit to the judgment of the Court. *Reynolds v. United States*, 80 S. Ct. 30, 32, 4 L. Ed. 2d 46 (1959). It is never utilized or denied as a means of punishment. *Id.* "Our criminal system has made a basic choice: crimes are to be deterred by the threat of subsequent punishment, not by prior confinement. States should not be permitted to undermine this judgment by substituting pretrial detention in the guise of excessive bail for the existing criminal system which favors freedom prior to conviction." *Sistrunk v. Lyons*, 646 F.2d 64, 70 (3d. Cir. 1981). Accordingly, the use of the bail power to keep Defendants in jail before judgment is "contrary to the whole policy and philosophy of bail." *Stack v. Boyle, supra*, 342 U.S. at 10. When the risk of flight is slight, "release on one's own recognizance would then be constitutionally required." *United States v. Scott*, 450 F.3d, 863, 866 (9th Cir. 2006).

Given the finding of Defendant's indigency, lack of prior criminal history and substantial ties to the community, this Court determined his risk of flight was slight, thereby requiring his release on his personal recognizance as a matter of constitutional law. Prior to being released, he was incarcerated for approximately nine (9) days solely because of his inability to post the amount set as bail. The 8th Amendment to the U.S. Constitution provides that "excessive bail shall not be required ..." In *Stack v. Boyle, supra*, the Supreme Court noted that bail set at a figure higher than an amount reasonably calculated to fulfill this purpose [*i.e.*, assure the presence of the accused at trial] is excessive under the 8th Amendment." 342 U.S. at 3. Given Defendant's indigency and eligibility for release on his personal recognizance, the setting of bail in any amount was excessive and thus contrary to the 8th Amendment since

said amount could not be deemed to be "reasonably calculated" to assure his appearance at trial. *Id.* See also *Karpouzis, supra,* 36 V.I. at 149.

In *Bandy v. United States,* 364 U.S. 440, 441, 81 S. Ct. 197, 198, 5 L. Ed. 2d 218 (1960), the Court posed the following question:

> "Can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have enough property to pledge for his freedom? It would be unconstitutional to fix excessive bail to assure that a Defendant will not gain his freedom." Yet, in the case of an indigent Defendant, the fixing of bail in even a modest amount may have the practical effect of denying his release."

Clearly, given his indigency, the bail of $100,000.00 surety imposed on Defendant could only be deemed to be intended to punish him before conviction and deny him his freedom pending trial. Accordingly, in light of his indigency and slight risk of flight, there could have been no error or manifest injustice in ordering his release on his personal recognizance.

## CONCLUSION

As noted herein, bail in this Court has generally been set and continues to be set in violation of the B.R.A. and the U.S. Constitution. Any discomfiture associated with disagreement with my colleagues regarding pre-trial release must be weighed against vindicating the rights of the accused with respect thereto. Where, as here, the decision and others regarding pre-trial release are grounded in the firm belief that they are in accordance with law and the U.S. Constitution, the scales must be tipped in favor of vindicating the rights of the accused. Moreover, dissenting opinions among Judges at every level of the judicial system are certainly not uncommon. Indeed, if the Iraqi war teaches us anything, it teaches us to avoid rushing to judgment and unquestioningly accept the majority's assertions regarding the facts, because the majority is not always right. A similar lesson is taught by *Dred Scott v. Sanford,*[5] and *Plessy v. Ferguson,*[6] both majority decisions of the U.S. Supreme Court legalizing slavery and establishing the doctrine of "Separate but Equal," respectively. Both decisions were subsequently determined to be unconstitutional. Furthermore, it is axiomatic that *"stare decisis"* is no

---

[5]    60 U.S. 393 15 L. Ed. 691 (1856).
[6]    163 U.S. 537, 16 S. Ct. 1138, 41 L. Ed. 256 (1896).

ground for continued error.[7] By arbitrarily seeking to deny Defendant his right to bail on his personal recognizance and by continuing to insist on recommending bail based on the bail schedule, the People seek to continue the general practice of arbitrarily denying persons charged with non-dangerous crimes their right to freedom pending trial despite their presumption of innocence, substantial ties to the community and the absence of other risk factors regarding flight.

■ The People having failed to satisfy any of the factors required for reconsideration and in the absence of any cogent authority that Defendant's release on his personal recognizance is contrary to the B.R.A., any other apposite law, or the U.S. Constitution, this Court sees no need to reconsider its decision and reinstate the bail set by Judge Hollar. Furthermore, this Court will continue to apply the B.R.A. in setting bail, even in the face of continuing uninformed criticism by members of the public who have become conditioned to the arbitrary setting of bail in the Superior Court.

For all of the foregoing reasons, the Motion to reconsider is Denied. An appropriate Order is attached.

---

[7] *Green v. United States*, 356 U.S. 165, 195, 78 S. Ct. 632, 649, 2 L. Ed. 2d 672 (1958) (Ordinarily it is sound policy to adhere to prior decisions but this practice has quite properly never been a blind, inflexible rule. Courts are not omniscient. Like every other human agency, they too can profit from trial and error, from experience and reflection. As others have demonstrated, the principle commonly referred to as *stare decisis* has never been thought to extend so far as to prevent the courts from correcting their own errors). *See also, Cleveland v. United States*, 329 U.S. 14, 28, 67 S. Ct. 13, 20, 91 L. Ed. 12 (1946) (*stare decisis* certainly does not require a court to perpetuate a wrong for which it was responsible)