

**FILED**
November 29, 2022 05:11 PM
SX-2020-CR-00098
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS,<br>Plaintiff,<br><br>vs.<br><br>JIMMY DAVIS,<br>Defendant. | SX-2020-CR-00098<br><br>CHARGE(S): RAPE FIRST DEGREE; UNLAWFUL SEXUAL CONTACT FIRST DEGREE; BURGLARY FIRST DEGREE; ASSAULT FIRST DEGREE; HOME INVASION<br><br>**2022 VI SUPER 95** |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's Renewed Motion for Modification of Bail ("Renewed Motion") filed March 22, 2021, fully briefed. At the June 14, 2021 hearing on the Motion, the Court issued findings and orally denied the Renewed Motion. On June 22, 2021, Defendant Jimmy Davis filed an interlocutory appeal to the Virgin Islands Supreme Court. On April 1, 2022, the Supreme Court issued an opinion holding that this Court "erred when it denied [Davis's] motion for modification of bail for the reasons given at the June 14, 2021 hearing." *Davis v. People*, 2022 VI 8, ¶ 8 (V.I. 2022). Because the Court "applied the incorrect legal standard when it…denied Davis's motion without explaining how its findings justified setting bail at $1,000,000," the matter was remanded so this Court could "clearly articulate how its findings support setting bail" in a particular amount. *Id.* at ¶¶ 12 n.2, 13. A hearing was held on October 26, 2022, wherein the parties were to "be prepared to present evidence, or to identify specific evidence in the existing record, on the factors to be considered regarding Defendant's release, including how those factors do or do not warrant imposition of specific terms and conditions and the maintenance of bail in any particular monetary amount."[1] For the reasons set forth below the Renewed Motion will be granted, and bail will be reduced from $1,000,000 to $250,000.

## BACKGROUND

Davis was arrested on April 6, 2020 for rape in the first degree, among other charges. In the arrest report bail was listed at $100,000, "as per chart."[2] At his advice of rights hearing on April 8, 2020, the People objected to Davis being released on bail, proffering that he was a flight

---

[1] Order (Apr. 22, 2022) (setting hearing for May 24, 2022 on the Renewed Motion following the Supreme Court's remand). That hearing was delayed, ultimately until October 26, 2022, as between April 2022 and October 2022, eight different attorneys moved to be relieved as Defendant's counsel.

[2] Probable Cause Fact Sheet, at 38; *see also* Amended Order Modifying the Setting of Bail in the Absence of a Judge (SX-2020-MC-00024) ("Bail Chart"), signed March 23, 2020 by then Presiding Judge Harold W.L. Willocks, which sets bail for first-degree rape at $100,000.

risk and a danger to the community.[3] The People also claimed that Davis was to be serving a federal sentence and was mistakenly released before committing the instant offense.[4] At the April 8, 2020 initial hearing, the magistrate judge ordered that Davis's bail would "remain at $1,000,000."[5]

Davis first moved for reconsideration of bail on August 11, 2020, arguing that $1,000,000 was grossly excessive and designed only to punish, noting his indigency. First Motion for Modification of Bail ("First Motion"), at 3. Davis noted that he has lived on St. Croix all his life, has numerous family members here including his parents, and "upon learning a warrant was issued for his arrest in this matter...turned himself in," thus arguing that he did not constitute a flight risk. *Id.* Davis indicated that his mother would be willing to serve as his third-party custodian and assure his appearance before the Court. *Id.* Lastly Davis noted, without reference to any particular cases, his history of appearances before various courts in other matters. *Id.*

In opposition, on August 17, 2020, the People proffered that because Davis's National Crime Information Center ("NCIC") and Virgin Islands Police Department ("VIPD") records indicated that he had been arrested "approximately" 38 times and convicted for 8 offenses—many of which occurred while he was on bond or supervised release for other offenses—Davis posed a risk of physical harm to the community. Opposition to First Motion for Modification of Bail ("First Opposition"), at 2. The People also argued that Davis had been involved in multiple high-speed chases with VIPD, and "has shown a disregard for the orders of this and other courts," and as such presented a flight risk.[6] *Id.* at 2-4. While the People agreed that Davis eventually surrendered to

---

[3] Memorandum Record of Proceeding (Apr. 8, 2020).

[4] *Id.* Davis has indicated that he was in federal custody from February 26, 2018 until March 27, 2020. *See* Defendant's Emergency Renewed Motion for Modification of Bail, at 3 (Dec. 1, 2020). A warrant was issued for Davis by the U.S. District Court magistrate judge on March 31, 2020, for failure to report to probation within 72 hours of being released. *See* Probable Cause Fact Sheet, at 61.

[5] *Id.* The WebEx recording of this hearing, conducted without a court reporter, is unavailable and no transcript exists. As such, it is unknown what findings, if any, were made by the magistrate judge regarding the bail amount. Further, it remains unclear from the available record whether the magistrate judge in fact increased Davis's bail from $100,000 to $1,000,000 at that hearing or, if not, when the bail was increased.

[6] The First Opposition included an April 4, 2020 supplemental VIPD report in this matter and February 6 and February 27, 2018 supplemental reports related to VIPD's attempt to arrest Davis for a December 12, 2017 assault (Complaint No. 17 A-11951). Those 2018 supplements reported that Davis made "several telephone calls" to the Superior Court Clerk's office, "became irate and began cursing." Further, Davis is reported to have called the Superior Court inquiring about a family court case involving him. When the clerk advised him that the requested information could not be disclosed by phone, "Mr. Davis began cursing and he made threats saying the Superior Court will find the clerk in a body bag."

Davis was arrested for the December 2017 assault on February 26, 2018, as he sought to evade police. The supplemental report stated that police pursued Davis until one marked VIPD unit cut him off, at which point "Davis then placed the truck he was operating in reverse and collided into" a second marked police vehicle.

Another high-speed chase referenced in the First Opposition occurred January 31, 2010 as recounted in the U.S. District Court's description, of which the Court takes judicial notice: "On January 31, 2010, police were informed that an individual with a gun was seen in the Aurea Diaz Housing Community driving a blue Suzuki Aerio. Police responded and observed a vehicle matching this description a short distance from the housing community. A high-speed chase ensued; the suspect eventually drove through a fence on someone's property and drew a gun on the pursuing officer. The suspect escaped, but abandoned the vehicle. Inside the vehicle, police found a cell phone that

police, they noted that he refused to complete the booking process by providing buccal swabs. *Id.* at 4. The People also stated that "law enforcement records indicate that the Defendant has used multiple aliases." *Id.* Lastly, the People detailed previous threats Davis allegedly made to a victim in one matter and to a juror in another, and stated that the victim in the instant matter and her brother would both testify that after the alleged rape, Davis told them he was going to return to their residence.[7]

In his August 28, 2020 reply, Davis noted that the People's First Opposition focused almost exclusively on prior arrests, the majority of which had been dismissed or resulted in no conviction. First Reply Re: Motion for Modification of Bail ("First Reply"), at 1. Davis also proffered that he has remained on the island of St. Croix for his entire life, thus could not be considered a flight risk. *Id.* at 2.

A hearing was held November 16, 2020, wherein the Court orally denied the First Motion without prejudice and instructed counsel to provide supplemental information regarding the status of Defendant's federal sentence.[8]

On December 1, 2020, Davis filed his Emergency Renewed Motion for Modification of Bail ("Emergency Motion") and provided an April 14, 2020 V.I. Bureau of Corrections Sentence Data Record ("Timesheet") reflecting the status of his incarceration for Territorial matters.[9] Also attached to the Emergency Motion was a pretrial release order from two 2018 criminal cases brought against Davis, to support his contention that because this Court previously released Davis pending trial, there was "no reason for the court to diverge from the prior ruling in this matter."[10]

---

allegedly contained Defendant[ Davis]'s picture. A police officer identified the person in the picture on the phone as the person he was pursuing. Based on these circumstances, the Superior Court issued a search warrant for No. 816 William's Delight and an arrest warrant for Defendant. On February 13, 2010, members of the VIPD executed the search warrant at 816 William's Delight. During the execution of this search warrant, a member of the VIPD witnessed what appeared to be a hand grenade being tossed from the living room window of the house. The search of the residence also revealed a handgun. Defendant Jimmy Davis and his mother were the only occupants of the home at the time of the search. Defendant was arrested and placed in the custody of the VIPD." *United States v. Davis*, 2010 U.S. Dist. LEXIS 59354, at *2-3 (D.V.I. June 15, 2010).

[7] In an earlier federal prosecution, while on supervised release following a term of incarceration for conviction of felon in possession of ammunition, Davis was found to have violated conditions of his release, disturbing the peace by threatening the minor victim that if she told anyone what happened, "he would deal with [her] mother, [her] father, and he was going to leave [her] brother for last." *United States v. Davis*, 748 F. App'x 449, 451 (3d Cir. 2018).

The People also noted that Davis was arrested in 2014 for threatening a witness/corruptly influencing a juror. The Court judicially notes the records of the Superior Court, which reflect that Davis was charged in Case No. SX-2014-CR-00028 with a violation of 14 V.I.C. § 1501. That matter was dismissed with prejudice on the People's motion.

[8] Memorandum Record of Proceeding (Nov. 16, 2020).

[9] The Emergency Motion indicated that the Timesheet "does not fully reflect the assessment of Mr. Davis's incarceration" for federal matters. Emergency Motion, at 3.

[10] The Court takes judicial notice of the Superior Court's records reflecting the following: in SX-2018-CR-00012, pursuant to May 16, 2019 Plea Agreement, Davis was to plead guilty to Simple Assault and Battery/Domestic Violence (14 V.I.C. §299(2) and 16 V.I.C. §91(b)(1) and (2)) and to serve six months incarceration concurrent with his federal sentence. Davis remained in federal custody and was not brought before the Superior Court for change of plea hearing, as "the United States Marshal Service refuses to honor any writ [of habeas corpus ad prosequendum] relating to Defendant Jimmy Davis for Territorial matters." Order (Jul. 19, 2019). The case was dismissed with prejudice on

Davis argued that none of the exhibits offered by the People established their "inflammatory accusation" that he had participated in several high-speed chases with police, and reiterated that he voluntarily surrendered to police in this matter.[11] *Id.* at 5-6. Lastly, Davis proffered that the People's contention that his arrest record "ipso facto establishes he is a threat to the community…is a mischaracterization that belies the foundational constitutional principle that one is presumed innocent until proven guilty." *Id.* at 6. The People did not respond in writing to the Emergency Motion.

At a status conference held December 30, 2020, the Court "accepted the People's suggestions and concerns," found Davis's proposed conditions of release insufficient, and denied the Emergency Motion.[12] The Court noted that it was "primarily concerned with the potential danger that Defendant may pose to the community," rather than his being a potential flight risk. Renewed Motion, at 3.

In his Renewed Motion, Davis in part incorporates his prior arguments by reference, and further argues that the People offered a false statement at the December 30, 2020 status conference regarding his grandmother's "refusal to let Defendant reside at her residence due to his behavior." Renewed Motion, at 3-4. In support, Davis offers the January 12, 2021 Declaration of Genoveva Tirado, his grandmother ("Declaration"), who declared that "the language contained in the Virgin Islands Police Department's Supplement Report No. 1, page 3 dated April 4, 2020 is false, and is a misrepresentation of my conversation with Officer [Naemah] Daniel on that date." Declaration, at 2. Davis argues that "the clear falsity of the evidence the People put forward calls into question the veracity of all other supporting arguments and statements made in this and other police reports introduced by the People." Renewed Motion, at 3. Davis also puts forth his brother, Stephen Davis, as a potential third-party custodian. *Id.* at 4.

The People's June 11, 2021 Opposition to Renewed Motion for Modification of Bail ("Renewed Opposition") incorporates by reference the previous written opposition. The People deny that Officer Daniel's statement in the supplemental report was false, note that the accusation of that statement's falsity is the only difference between the Renewed Motion and those previously filed, and emphasize that the Court denied all such previous motions. Renewed Opposition, at 1.

---

January 27, 2020 after the federal sentence had run. In SX-2018-CR-00044, charges of simple possession of a controlled substance and aggravated assault and battery upon a police officer were dismissed with prejudice by Order of June 12, 2018, on the People's June 11, 2018 Motion to Dismiss with Prejudice, for the reason that "this matter will be prosecuted in the District Court of the Virgin Islands."

[11] "The Exhibits to the People's Opposition to the original motion show it took several days for authorities to locate Mr. Davis in previous matters. But this does not establish that Mr. Davis was evading justice." Emergency Motion, at 5.

[12] Memorandum Record of Proceeding (Dec. 30, 2020).

A hearing was held on the Renewed Motion on June 14, 2021, wherein "the court reviewed for the record Defendant's record of arrests and convictions" and denied the motion.[13] Regarding risk of flight, the Court stated in part:

> There's not anything in the record that I've seen, nor do I hear anything from the People, that makes me believe that Mr. Davis is a flight risk from the island of St. Croix. But that, in and of itself, doesn't suggest that Mr. Davis would appear at court when obligated to appear at court...
>
> ....
>
> ...I can say with a very high degree of assurance that a substantial number of the times when Mr. Davis was arrested were times when he was under court supervision in one form or another and each of those arrests I would expect would constitute a violation of conditions of release. In this case...he refused...to give a buccal swab, prompting the magistrate judge's order that he submit to that process, which, as far as I can tell from the record, has not yet been complied with. All of that being said...I don't have good assurance that he would comply with the requirements to make himself available pursuant to court order at any particular time.

Transcript of June 14, 2021 Motion Hearing ("Transcript"), at 12, 14.

As to Defendant Davis posing a danger to the community, the Court stated in part:

> Mr. Davis is reported, according to the record in front of me, to have, among his multiple calls to the Superior Court...a particular call was made under a ruse that Mr. Davis called himself by a different name, but requested information about an outstanding warrant, and the responding clerk indicating that she was unable to provide that type of information...by telephone, threatened that person on the phone, indicating that...she would be found in a body bag.
>
> In this case, the 15-year-old...alleged victim...and the 11-year-old brother of the alleged victim, again, according to the charges, none of which have been proven in court, but that Mr. Davis was uninvited into the residence into which he entered and simply followed the 11-year-old brother into the house uninvited. After the incident took place to the alleged victim and to the 11-year-old brother, Mr. Davis reportedly said that he would be back. It was within the next three days that Mr. Davis was arrested and ultimately turned himself in.
>
> Based on the history from 1995 to the present, I cannot do anything other [] than to take seriously the statements that Mr. Davis has made, specifically with regard to the alleged victim in this case.

Transcript, at 15-16.

On June 22, 2021, Davis appealed the Court's denial of the Renewed Motion to the Virgin Islands Supreme Court.[14] Trial was then scheduled for November 8, 2021.[15]

---

[13] Memorandum Record of Proceeding (June 14, 2021).

[14] Notice of Appeal (June 22, 2021).

[15] Final Scheduling Order (Oct. 7, 2021).

## I.       *Motions to be Relieved as Counsel*

On October 14, 2021, Davis's attorney, Robert Kuczynski, Esq., moved to withdraw as counsel. Emergency Motion to Withdraw as Counsel and Stay Trial ("Kuczynski Motion"). Therein, Attorney Kuczynski stated that Davis had "terminated the attorney-client relationship and discharged undersigned counsel via telephone call," and that there had been an irreparable breakdown in the attorney-client relationship. Kuczynski Motion, at 1. Further, he proffered that "Defendant's threats, accusations, and disagreements regarding the upcoming trial ha[ve] rendered representation wholly impossible." *Id.* at 2.

The Court granted the Kuczynski Motion by October 15, 2021 Order, and all scheduled dates were vacated. Charles Lockwood, Esq. was appointed as counsel by Order of October 27, 2021. Nine days later, on November 8, 2021, Attorney Lockwood moved to be relieved, noting that he had previously been appointed to represent Davis in two other matters and Davis had told him to withdraw. Motion to be Relieved as Appointed Counsel ("Lockwood Motion"), at 1. Attorney Lockwood stated that Davis "harbored a strong personal dislike and distrust of the undersigned, making it impossible...to fairly and effectively represent Mr. Davis." *Id.* at 1-2.

The Court granted the Lockwood Motion and appointed Lee Rohn, Esq. as counsel on November 30, 2021. Two weeks later, on December 15, 2021, Attorney Rohn moved to be relieved, providing an affirmation from another attorney in her office to whom Davis had made physical threats via telephone. Motion to be Relieved as Appointed Counsel ("Rohn Motion"), at 2. Attorney Rohn further stated:

> Defendant, Davis, is known to be violent, and a threatening human being, with violent tendencies. Undersigned has an all-female staff, except one male, who are all worried about having to deal with Jimmy Davis as a client. That staff previously dealt with Defendant when he was represented by Attorney [Mary Faith] Carpenter, and he was combative, and difficult to deal with. The undersigned and her office staff are fearful of the defendant.
> *Id.*

The Court granted the Rohn Motion and appointed Kye Walker, Esq. as counsel on December 21, 2021. A month later, on January 21, 2022, Attorney Walker moved to withdraw, stating that starting a week after she was appointed, Davis called her office "almost every day and sometimes more than once per day," and made threatening remarks. Ex Parte Motion for Leave to Withdraw as Counsel ("Walker Motion"), at 1. Attorney Walker further stated:

> The undersigned's staff already feels harassed and threatened by Davis. In addition, a key member of the undersigned's litigation team had prior interactions with Davis when she worked at another office and Davis was similarly abusive and threatening to the staff of that office...
>
> ....
>
> ...Finally, a close friend...who interacted with Davis through his employment at the Superior Court, consulted with the undersigned with regard to a situation in which Davis was considered a possible threat to him and his family...The undersigned does not feel safe

having any interactions with Davis and needs to shield and protect her staff from any further abusive phone calls and threats.

*Id.* at 2.

The Court granted the Walker Motion and appointed Shari D'Andrade, Esq. as counsel on February 10, 2022. A day later, Attorney D'Andrade moved to withdraw by February 11, 2022 Motion to be Relieved as Appointed Counsel ("D'Andrade Motion"). Attorney D'Andrade stated that in her former position as General Counsel to the Bureau of Corrections, she had visited the Alexander A. Farrelly Complex and Davis had physically threatened her, requiring a BOC officer to intervene. *Id.* at 1. She proffered that "because of that incident and Defendant's violent nature, specially trained corrections officers closely guarded the undersigned in the event she had to tour the unit where Defendant was housed." *Id.* She also provided an Affirmation and further argued that because she "knows Defendant to be combative and violent," she could not competently represent him. *Id.*

The Court granted the D'Andrade Motion and appointed Jerry Evans, Esq. as counsel on March 10, 2022. Five days later, Attorney Evans filed his March 15, 2022 Stipulation for Substitution of Appointed Counsel ("Evans Stipulation"), approved by March 18, 2022 Order, stipulating to the appointment of Dwayne Henry, Esq. as counsel. Attorney Henry represented Davis until May 4, 2022 when, citing a complete breakdown in communications and Davis's request that he move to be relieved, Attorney Henry filed his Motion to be Relieved as Counsel ("Henry Motion").

The Court granted the Henry Motion and appointed Michael Jurek, Esq. as counsel on May 10, 2022. Three days later, Attorney Jurek moved to withdraw as counsel by May 13, 2022 Motion to Withdraw as Appointed Counsel, citing a lack of criminal practice experience and advising that because he was based in Ohio, he would be burdened by the appointment ("Jurek Motion").

Finding that the appointment was likely to result in an unreasonable financial burden on counsel, the Court granted the Jurek Motion to be relieved pursuant to V.I. S. Ct. R. 211.6.2(b) by Order of May 19, 2022, and the Court appointed Scot McChain, Esq. as counsel by Order of May 27, 2022. Attorney McChain filed his July 1, 2022 Motion to be Relieved as Counsel ("McChain Motion"), providing a voicemail recording wherein Davis told Attorney McChain that he believed the attorney would cause him to go to jail and instructed him to withdraw.

The Court granted the McChain Motion and appointed Jeffrey Moorhead, Esq. as counsel on August 1, 2022. Attorney Moorhead moved to withdraw by August 15, 2022 Motion to Withdraw as Attorney of Record ("Moorhead Motion"), noting that as the brother of then-Superior Court Judge Robert Molloy, he was privy to "numerous text messages from jail to a Superior Court employee" in 2016, which threatened Judge Molloy and his family with physical harm. Moorhead Motion, at 1. Attorney Moorhead further stated:

In his threats, Defendant indicated that he knew exactly where Judge Molloy resided. Defendant's threats were taken very serious and extra security had to be provided to

Judge Molloy and his family by the Superior Court before Defendant was transferred to jail on St. Thomas. Upon learning about the threats, the undersigned immediately contacted Defendant in jail and engaged in a heated conversation with him during which disrespectful and inappropriate language was used by Defendant…the undersigned has NO DESIRE to ever see Defendant again much less represent him in this or any other matter.

*Id.* at 1-2 (emphasis in original).

The Court granted the Moorhead Motion by Order entered August 18, 2022 and appointed H.A. Curt Otto, Esq. as counsel on August 19, 2022. Attorney Otto moved to withdraw as counsel by August 22, 2022 Motion to be Relieved as Counsel ("Otto Motion"), informing the Court of his belief that Davis was responsible for the theft of Christmas presents in his office in 1996, when Attorney Otto had previously been appointed to represent Davis. Otto Motion, at 1.

The Court granted the Otto Motion by Order entered August 23, 2022, and appointed Howard Phillips, Esq. as counsel by Order Appointing Counsel on August 26, 2022. Attorney Phillips remains counsel for Defendant.

## II.     *October 26, 2022 Hearing*

Ahead of the October 26, 2022 hearing on Defendant's Renewed Motion, on October 24, 2022, Davis filed an Addendum to Motion for Release ("Addendum") to incorporate a recent Virgin Islands Supreme Court case, *Moran v. People*. *Moran* held that "the Superior Court committed error to the extent that it denied Moran's motions [to modify conditions of pretrial release] based on a belief that individuals charged with what it believes to be serious crimes must always be subject to *travel restrictions* and should be denied permission to leave the Virgin Islands for that reason alone." 2022 VI 9, ¶¶ 12-13 (V.I. 2022) (emphasis added).

Davis proffers that "the same rule would apply to the many past prosecutor charging decisions the Attorney General's office has made implicating Davis, the vast majority of which were either dismissed or resulted in non-convictions," and that "after *Moran*, the number of time[s] Davis has been arrested or charged should have no bearing on his bail or conditions of release." Addendum, at 1, 3. Davis further posits that the rule established in *Moran* regarding travel restrictions should apply to bail "and to imposition of conditions of release other than travel." *Id.* at 5. He also asks that his "long held 'bad' reputation among court staff and corrections officers…not dictate or unduly influence the Court's decision." *Id.* at 8. Davis states:

The elephant in the room is that Davis has been a thorn in the side of many in the criminal justice system to include court clerks and corrections officers, and he has allegedly made unseemly and unacted upon threats to others but his verbal conduct towards others involved in the criminal justice system, to include his own appointed attorneys[,] under *Moran* should have no bearing on bail or conditions or release.

*Id.*

Lastly, he argues:

Davis's scant history of fleeing from the VIPD—with whom he has had a lengthy and contentious history over the past 25 years—on two or three occasions is relatively limited and his reaction to the police may well have been motivated by reasons other than an unwillingness to appear before this Court to defend himself.

*Id.*

At the October 26, 2022 hearing, Davis asked to be released on his own recognizance or, alternatively, for cash bail to be set at an amount that he as an indigent defendant could realistically be able to post. Davis offered his sister, Jacqueline Davis Wathey, who appeared and gave testimony, as a potential third-party custodian for "my little brother." She stated that Davis has never been violent with her or her family, and emphasized that he "just talks a lot." She testified that Davis was able to follow their parents' rules growing up, and that she did not have concerns about Davis potentially coming to live with her. She indicated her belief that Davis needs counseling and agreed to try to arrange for counselling if Davis were released into her third-party custody. Lastly, she emphasized that their mother is very sick, and that she is the only one to care for her. She conceded, however, that if Davis were to be released, she would not be at home from 8:00 a.m. - 5:00 p.m. to supervise him while she was at work.

The People called VIPD Commander Naomi Joseph to testify. She stated that, in her opinion, if Davis were to be released, she would be concerned for the safety of the community. She noted her knowledge of prior high-speed chases involving Davis, stated that he does not follow court orders, and provided that she has heard about, but not witnessed, incidents in which Davis was violent toward police officers. She testified that she does not know Davis's sister, although she has met his mother, grandmother, and brother. She also told the Court that VIPD is stretched thin and does not have the extra resources necessary should they have to track down Davis and arrest him again. She testified to her opinion that Davis's family "has no control over him, he does what he wants and if you resist him he will fight." Asked on cross-examination whether she could provide specific examples of Davis's failure to comply with court orders or release conditions, Commander Joseph replied that Davis needed to be restrained in an unspecified District Court proceeding to keep him quiet, and that "if memory serves me correctly, he was supposed to stay at one location [on pretrial release] but was at another." She restated VIPD's position that Davis's grandmother would not permit Davis to stay in her home. Lastly, she testified that she was unaware of any times when Davis left the island in violation of a court order.

### III.    *Davis's Record of Arrests and Convictions*

The record before the Court indicates that prior to the instant matter, Davis has been arrested 31 times.[16] These arrests include three separate charges for aggravated assault and battery upon an officer, three charges for assault, one charge for attempted murder, one charge for

---

[16] As to four of his arrests, Davis was charged with multiple offenses, later severed, resulting in a total of 35 separate matters for which Davis has been arrested. The People asserted that Davis has been arrested "approximately" 38 times and convicted in 8 cases. First Opposition, at 2.

burglary, one charge for contempt of court, three charges for possession of controlled substances, one charge for grand larceny, one charge for operating without a license, five charges related to unauthorized firearm possession and transport, one charge for rape, two charges for reckless endangerment, eight charges for robbery, including one for kidnapping, one charge for threatening a witness, one charge for unauthorized use of a vehicle, and one charge for unlawful sexual contact. In two cases no complaint was filed, and in one other case the prosecution dismissed nolle prosequi. Thirteen cases resulted in dismissal without prejudice, five cases were dismissed with prejudice. Davis was acquitted in two cases, and six cases have no known disposition.[17]

Six of Davis's arrests resulted in convictions, four of which were in federal court. On September 17, 1997, Davis pled guilty to unauthorized use of a vehicle and was placed on one-year supervised probation.[18] On August 14, 2002, Davis was convicted of attempted murder and sentenced to 30 years imprisonment.[19] On January 28, 2013, Davis was convicted of assault on a federal corrections officer and sentenced to 12 months imprisonment.[20] Davis was charged on March 4, 2013, with simple assault on a correctional officer, convicted and sentenced to 12 months incarceration.[21] On March 16, 2017, Davis was found to have violated the terms of his probation and his supervised release was revoked in connection with his conviction of unlawful transport of firearms.[22] Lastly, on April 12, 2019, Davis was convicted of simple possession of cocaine and aggravated assault and battery and sentenced to two years imprisonment.[23]

## LEGAL STANDARD

The Eighth Amendment to the United States Constitution, applicable to the Virgin Islands, and Section 3 of the Revised Organic Act of 1954, both provide that "excessive bail shall not be required." When setting bail, a court "shall impose the least restrictive…conditions of release that will reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process." V.I. Crim. R. 5-1(b). "When a court resolves a motion to modify bail and release conditions, it must make an individualized determination in order to ensure that the bail is not excessive." *Rieara v. People*, 57 V.I. 659, 667 (V.I. 2012). "The fact that one judge has set bail or pretrial release conditions a certain way should have no bearing on a subsequent motion to modify those conditions." *Moran*, 2022 VI 9, ¶ 18 (citing *Rieara*, 57 V.I. at 667).

An order establishing or modifying release conditions cannot be "based on 'a mere…recitation of relevant criteria,' but rather 'should clearly explain why those criteria support

---

[17] Probable Cause Fact Sheet, at 31-58.

[18] *Id*. at 32.

[19] *Id*. at 36.

[20] *Id*. at 55.

[21] The date of entry of judgment of conviction for this offense is unclear in the record.

[22] *Id*. at 57.

[23] *United States v. Jimmy Davis*, no. 1:18-cr-00015, Judgment and Commitment (Mar. 15, 2020).

the ultimate bail amount or other release conditions." *Davis*, 2022 VI 8, ¶ 11 (citing *Rieara*, 57 V.I. at 666). "[W]here a defendant's new motion includes additional evidence or new and different proffers…the court should [] provide reasons for retaining the bail conditions as initially set" or, by implication, for the modified conditions. *Rieara*, 57 V.I. at 667.

In reviewing a motion for modification, a court may consider whether the defendant is a flight risk or a danger to the community, "as well as other relevant factors." *Davis*, 2022 V.I. 8, ¶ 10 (citing *Tobal v. People*, 51 V.I. 147, 161 (V.I. 2009)). While the Court "is not precluded from imposing bail that a defendant cannot afford to post, a defendant's indigence…is certainly a relevant consideration." *Id.* Proceedings "such as considering whether to release on bail or otherwise" are exceptions to which the Virgin Islands Rules of Evidence do not apply. Nonetheless, the decision must be made based on evidence found in the record. V.I.R.E. 1101(d); *Davis*, 2022 VI 8, ¶ 12 n.2.

"Whether bail is set at a level to adequately ensure the defendant's presence at court depends on whether the defendant is a flight risk." *People v. Rionda*, 74 V.I. 258, 267 (V.I. Super. 2021) (citing *Tobal*, 51 V.I. at 156-57). Factors that may be considered when evaluating whether a defendant is a flight risk include:

> Potential length of the defendant's sentence if convicted, prior use of false identities or deceptive means by which the defendant may evade government detection if attempting to flee, the risk of retaliation from others which incentivizes the defendant to flee, the defendant's citizenship status, the defendant's employment status, the defendant's history of travel, the defendant's ties to the jurisdiction, and whether the defendant has considerable contacts or ties to family members outside of jurisdiction.

*Id.* at 267-68 (internal citations omitted).

Adequacy of bail also depends on whether the defendant is a danger to the community. *Id.* at 270. Factors include, but are not limited to, "the nature of the charges, the defendant's criminal history, the defendant's history of violence, a prior court order to attend anger management, and the defendant's history of mental illness." *Id.* at 270-71 (internal citations omitted). *But cf. People v. Simmonds*, 48 V.I. 320, 329 (V.I. Super. 2009) (defendant is presumed innocent until proven guilty, thus pending charges cannot necessarily determine danger to the community).

## DISCUSSION

The record before the Court demonstrates that Davis is entitled to modification of bail. The record is unclear as to whether the increase in Davis's bail amount—set at $100,000 at the time of arrest—was increased to $1,000,000 by the magistrate judge at the advice of rights hearing or at some other time. Regardless, the Court finds that $100,000 bail is insufficient in this case, but that $1,000,000 is excessive. As explained below, and noting Davis's indigency, bail will be modified and set at $250,000.[24]

---

[24] *See Davis*, 2022 V.I. 8, ¶ 10 (a defendant's indigency is relevant, but not dispositive).

### I.      *Risk of Flight/Assuring Defendant's Presence at Court*

When making a bail determination, a court must ensure that it is "set at a level to adequately ensure the defendant's presence at court." *Rionda*, 74 V.I. at 267. Factors the Court may consider that are relevant to this matter include: potential length of sentence if convicted, prior use of false identities, risk of retaliation from others which incentivizes flight, Defendant's citizenship status, employment status, history of travel, ties to the jurisdiction, and whether Defendant has considerable contacts outside the jurisdiction. *See id.* at 267-68.

Here, the potential sentence for a first-degree rape conviction is significant, ranging from 10 to 30 years. This factor increases the risk that Defendant may not appear, thus weighing in favor of a higher bail amount. There is evidence in the record to indicate that Davis has used aliases in the past.[25] However, there is no evidence that he has ever used these aliases in an attempt to flee the jurisdiction or to evade court appearances. As such, this factor weighs in favor of reducing the current bail amount. Regarding risk of retaliation from others, Davis refers to his "contentious history" with VIPD. Addendum, at 8. He claims that his reactions to police may well have been motivated not by "an unwillingness to appear" in court, but because he may fear VIPA retaliation. At the October 26, 2022 hearing, Davis's counsel reiterated his position that Davis simply has had a bad relationship with police. The fact that Davis may have a bad relationship with police is considered neutral as a factor, in that he may attempt to flee from police to avoid retaliation, or the perceived threat of potential retaliation may dissuade him from seeking to flee the jurisdiction or evade court appearances.

As a St. Croix native and lifetime resident, Davis is a United States and Virgin Islands citizen with numerous family members, including his parents, who are residents of St. Croix. First Motion, at 3. This factor weighs in favor of reducing the current bail amount because it decreases the likelihood that Davis would leave the jurisdiction. Davis is unemployed, but because the record demonstrates that he has been in and out of BOC and federal custody for much of his adult life, the Court does not find that his lack of employment weighs against assuring his presence at court. This factor also weighs in favor of reducing Davis's current bail.

The record supports Davis's contention that he has strong ties to the jurisdiction, and there is no evidence in the record to indicate that Davis has ever attempted to flee the island of St. Croix. The Court has previously indicated that it does not consider Davis a flight risk from the island. Transcript, at 12. However, the Court remains concerned about Davis's appearing before the Court when scheduled and prospects for his compliance with Court orders, especially in light of a series

---

[25] *See* April 8, 2020 Probable Cause Fact Sheet, at 32, 38, 39, 47 (VIPD reports identify Davis's nickname/alias as Bulldog); *see also* 44 (NCIC report provides that Davis has other aliases, including Jack Bailey). In the VIPD Supplemental Report relating to the December 12, 2017 assault charge against Davis, the detective reported that on February 6, 2018 Davis used the alias "Micheal Rivera" during a telephone inquiry to the Superior Court clerk's office, during which he cursed and threatened the clerk. *See* First Opposition, Exhibit A.

of events related to a federal case against Davis that took place during the week prior to the incident giving rise to the instant matter.

Davis argues that "for all his arrests and convictions there is no record before this Court that Davis has any 'failures to appear' for court or that he violated any condition of release prompting revocation and return to custody." Addendum, at 2. However, the record reflects that Davis was released from federal custody on March 27, 2020, and by March 31, 2020, Davis had an active federal warrant against him for failure to report to probation.[26] Just three days later, on April 3, 2020, the alleged rape at issue in this case took place.[27] Not only does this series of events demonstrate that Davis was in defiance of an order of the federal court when he committed the instant offense, but it decreases the Court's confidence that he will appear before this Court in future proceedings in this matter.

## II. *Danger to the Community*

Davis is correct that the prosecution's decision "to charge the defendant with a serious crime—*standing alone without more*—should have no bearing on the amount of bail or the conditions of pretrial release." *Moran*, 2022 VI 9, ¶ 17 (emphasis in original). Indeed, it is well-established both in caselaw and as a foundational principle of criminal law that a defendant is innocent until proven guilty and, as such, the charges a defendant is facing cannot be the *sole* basis for a court's decision regarding pretrial release. Davis is also correct that "the purpose of bail is to ensure a defendant appears at trial," but he ignores another purpose of bail described in Virgin Islands Rule of Criminal Procedure 5-1(b): reasonable protection of the community. *See* Addendum, at 2.

Even though the nature of the charges is not the sole factor the Court examines, the charges may hold some place in the analysis. *See Rionda*, 74 V.I. at 270. Here, because the record is replete with other information to consider, the Court will take the nature of the charges into consideration for the purpose of acknowledging that the Bail Chart sets bail for first-degree rape at $100,000, a fact that weighs in favor of lowering Davis's current $1,000,000 bail. That fact does not, however, establish that bail of $100,000 is sufficient in the context of the facts of this case.[28]

The record indicates that Davis was previously ordered by courts to attend anger management, to participate in inpatient or outpatient substance abuse counseling, and to be referred for mental health treatment while incarcerated.[29] These previous orders weigh in favor of Davis's bail being set higher than $100,000. Although these orders do not dispositively establish that Davis suffers from anger issues or mental illness, they do demonstrate that other courts have been

---

[26] *See* Emergency Motion, at 3; Probable Cause Fact Sheet, at 61.

[27] Probable Cause Fact Sheet, at 1.

[28] The Court's acknowledgement of the Bail Chart is not meant to be an endorsement of its use as a judicial tool. Rather, it is only used as a means of comparison.

[29] Probable Cause Fact Sheet, at 10, 20, 57.

concerned about those issues, and that they may impact whether Davis appears in court when ordered or whether he poses a physical risk to persons in the community. In addition, Davis's sister testified at the October 26 hearing that she believes that Davis needs counseling.

Davis's record of arrests and convictions also supports a higher bail amount. Although he has been convicted of only a minority of the dozens of offenses for which he has been arrested and charged, four of his six convictions are for violent crimes: attempted murder, two assaults on corrections officers, and unlawful transport of firearms.

Further, Davis's contention that under *Moran* his actions towards those in the criminal justice system, verbal or otherwise, should have no bearing on his conditions of release is misguided. *See* Addendum, at 8. The issue in *Moran* was whether the seriousness of the crime charged, "standing alone without more," was sufficient to impose travel restrictions on a defendant who had not yet been convicted. *See* 2022 VI 9, ¶ 17. Because Davis's threats to court personnel and multiple court-appointed attorneys are well documented in the record, the Court properly considers them. Nevertheless, these verbal threats reflected in the record, while serious and not taken lightly, have not materialized into physical violence. Indeed, at the October 26 hearing Davis's sister testified that Davis "just talks a lot."

### III.     The Record Before the Court Supports Modification of Bail

The Virgin Islands Supreme Court has admonished that an order modifying a defendant's conditions of release cannot simply recite the relevant criteria but must clearly explain why such criteria ultimately support the Court's determination. *See Davis*, 2022 VI 8, ¶ 11. For example, in *People v. Cozier*, the court looked to the bail amount set in other courts in this jurisdiction for similar crimes. 2022 V.I. LEXIS 47, at *16 (V.I. Super. May 17, 2022). Davis points to events that gave rise to setting $500,000 bail for a rape defendant in *People v. Rodriguez*, 2018 V.I. LEXIS 5 (V.I. Super. Jan. 16, 2018). *See* First Motion, at 3. In *Rodriguez*, the Superior Court found that $500,000 bail was not excessive for a defendant "charged with allegedly sexually assaulting and carjacking a female at gunpoint after striking her vehicle and causing it to stop." *Id.* The Court agrees that this case is distinguishable from *Rodriguez*, in that aggravating factors of gun violence, weapons, or car jackings are not present.

Where a defendant provides "additional evidence or new and different proffers," the court must explain why that new information produces a modified outcome. *Rieara*, 57 V.I. at 667. Since the Court's last ruling Davis has provided an Addendum to his Renewed Motion, and has presented his sister, Jacqueline Davis Wathey, as prospective third-party custodian, who testified that Davis did not pose a risk of noncompliance with release conditions, but "just talks a lot."

Viewing the totality of the record in assessing Davis's potential risk of flight and danger to the community, the Court finds that the present bail set at $1,000,000 is excessive and will grant the Renewed Motion. By separate Order entered herewith, bail will be reduced to $250,000, together with conditions of pretrial release set forth in the accompanying Order.

Dated this **29** day of November, 2022.

                                                        DOUGLAS A. BRADY, JUDGE

**ATTEST**:

TAMARA CHARLES
Clerk of the Court

By: _____
        Court Clerk Supervisor
        11/29/2022



**FILED**
November 29, 2022 05:17 PM
SX-2020-CR-00098
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

**People of the Virgin Islands v.**
**Jimmy Davis**

Case Number: **SX-2020-CR-00098**
Charges: **14 V.I.C. 1701 - Rape 1st Degree**
**14 V.I.C. 1701 - Rape 1st Degree**
**14 V.I.C. 1708 - Unlawful Sexual Contact 1st Degree**
**14 V.I.C. 442 - Burglary First Degree**

## NOTICE of ENTRY
## of
## <u>Memorandum Opinion</u>

**To:** Amie M. Simpson, Esq.                     Howard Lee Phillips, Esq.

**Please take notice that on November 29, 2022**
**a(n)** _____ **Memorandum Opinion**
**dated** _____ **November 29, 2022** _____ **was/were entered**
**by the Clerk in the above-titled matter.**

**Dated:** **November 29, 2022**

**Tamara Charles**
**Clerk of the Court**

By:

_~~signature~~_

**Iris Cintron**
**Court Clerk Supervisor**